IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**MICHAEL W. HILL,**

    **Plaintiff,**

v.                                            **Civil Action No. 1:08cv1**
                                                **(Judge Keeley)**

**UNITED STATES OF AMERICA,**
**JOYCE FRANCIS,**
**VALERIE RAPPOLD,**
**KAREN LAMBRIGHT, and**
**ELLEN MACE LEIBSON,**

    **Defendants**.

## AMENDED REPORT AND RECOMMENDATION AND ORDER DENYING MOTION FOR COURT ORDER REQUIRING PARTIES TO CONTACT COUNSEL FOR A NON-PARTY[1]

**I.    Procedural History**

The *pro se* Plaintiff initiated this case on January 2, 2008, by filing a civil rights complaint against the above named Defendants. Plaintiff paid his initial filing fee on January 2, 2008.[2]

On July 16, 2008, the Undersigned conducted a preliminary review of the file and determined that summary dismissal was not appropriate at that time.[3] Summonses were issued

---

[1] The sole purpose of this Amended Report and Recommendation is to correct the Document Reference Number on page 19 of the Original Report and Recommendation.

[2] Dkt. Nos. 1 & 2.

[3] Dkt. No. 8.

1

that same day.[4]

On November 26, 2008, Defendants filed a Motion to Dismiss or, in the alternative, Motion for Summary Judgment with a memorandum in support.[5] A Roseboro Notice was issued on December 10, 2008.[6] On January 12, 2009, Plaintiff filed a "Brief in Opposition to Defendant's [sic] Motion to Dismiss, or for Summary Judgment."[7]

On May 29, 2009, the Undersigned issued a Report and Recommendation recommending that Defendants' Motion to Dismiss or, in the alternative, Motion for Summary Judgment be granted and Plaintiff's complaint be dismissed with prejudice except for Plaintiff's claim regarding retaliation, which was to be dismissed without prejudice for failure to exhaust his administrative remedies.[8] On June 11, 2009, Plaintiff filed Objections to the Report and Recommendation.[9] The Honorable Irene M. Keeley, United States District Judge, entered an Order rejecting the Undersigned's Report and Recommendation, denying Defendants' Motion, and remanding the case.[10]

On October 19, 2009, the undersigned issued a Scheduling Order requiring all discovery

---

[4] Dkt. Nos. 9 - 13.

[5] Dkt. No. 32.

[6] Dkt. No. 34.

[7] Dkt. No. 39.

[8] Dkt. No. 42.

[9] Dkt. No. 46.

[10] Dkt. No. 47.

to be completed by April 15, 2010, and all dispositive motions to be entered by May 15, 2010.[11]

On May 17, 2010, the Defendants filed a renewed Motion to Dismiss or, in the alternative, Motion for Summary Judgment with a memorandum in support.[12] On May 18, 2010, a Roseboro Notice was sent to Plaintiff.[13] Any response by Plaintiff was due on or before June 15, 2010. Plaintiff has failed to respond.

On March 24, 2010, a miscellaneous motion was filed by Dan Taylor, counsel for Colleen Watkins, M.D.[14] The Notice of Appearance and Motion requested that any/all further contact with Dr. Watkins be made solely through him and moved the Court for an Order requiring the parties to contact him regarding matters involving Dr. Watkins.

## II. Remaining Issues

After the District Court's rejection of the Undersigned's Report and Recommendation, five issues remain, which are addressed in Defendants' Renewed Motion to Dismiss or, in the alternative, for Summary Judgment:

1) Whether Plaintiff failed to exhaust his administrative remedies regarding his retaliation claim;

2) Whether Defendants violated Plaintiff's First Amendment rights by prohibiting him from communicating with his physician;

3) Whether Defendants violated Plaintiff's procedural due process rights guaranteed by the Fifth Amendment by failing to provide a hearing before allegedly prohibiting him from communicating with his physician;

---

[11] Dkt. No. 49.

[12] Dkt. No. 61.

[13] Dkt. No. 63.

[14] Dkt. No. 58.

4) Whether Defendants are entitled to dismissal for lack of personal involvement; and

5) Whether Defendants are entitled to qualified immunity.

## III. Standard of Review

### A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a

right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Summary Judgment**

According to the Federal Rules of Civil Procedure Rule 56(c) "[summary judgment] should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) . When deciding a summary judgment, the Court must review all evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

"[A]ny party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. After a motion for summary judgment has been made, the nonmovant must then produce some evidence that would allow a reasonable jury to return a verdict in his favor, thus producing a genuine issue for trial. Anderson, 477 U.S. at 249. The evidence must consist of facts that do more than just encourage mere speculation; they must be able to create fair doubt. Id. at 248.

## IV.    Analysis

### A. Exhaustion of Administrative Remedies

In its Renewed Motion, Defendants argue that Plaintiff's retaliation claim must be dismissed because, as indicated in the record, Plaintiff did not properly exhaust his administrative remedies by bringing the claim at all three levels as required. Specifically, Defendants argue that Plaintiff's first mention of retaliation is in Administrative Remedy ID No. 448632-A2 filed with the Central Office. Defendants argue that raising the retaliation claim for the first time at the Central Office level is not in compliance with the procedures for exhausting administrative remedies as set forth in 28 C.F.R. § 542.15(b)(2), and, therefore, the retaliation claim must be dismissed.

A Bivens action, like an action under 42 U.S.C. § 1983, is subject to exhaustion of administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). Porter v. Nussle, 534 U.S. 516, 524 (2002). Under the PLRA, a prisoner bringing an action "with respect

to prison conditions" under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. 42 U.S.C. § 1997e. Exhaustion, as provided in § 1997e(a), is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). While the phrase "with respect to prison conditions" is not defined in 42 U.S.C. § 1997e, the Supreme Court has determined that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, 534 U.S. at 517. Moreover, exhaustion is even required when the relief the prisoner seeks, such as monetary damages, is not available. Booth, 532 U.S. at 741. The United States Supreme Court has held that proper exhaustion of administrative remedies is necessary, thus precluding inmates from filing untimely or otherwise procedurally defective administrative grievances or appeals and then pursuing a lawsuit alleging the same conduct raised in the grievance. See, Woodford v. Ngo, 548 U.S. 81, 83 (2006). In Woodford, the United States Supreme Court clarified that the PLRA exhaustion requirement requires proper exhaustion. Id. at 84. The Court noted that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91. The Court found that requiring proper exhaustion fits with the scheme of the PLRA, which serves three main goals: (1) eliminating unwarranted federal court interference with the administration of prisons; (2) "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits." Id. at 93-94. As the Court concluded, "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair

opportunity to consider the grievance." Id. at 95.

The BOP provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). If the prisoner achieves no satisfaction informally, he must file a written complaint with the warden (BP-9) within 20 calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the warden's response, he may appeal to the regional director of the Federal Bureau of Prisons (BP-10) within 20 calendar days of the warden's response. Finally, if the prisoner has received no satisfaction, he may appeal to the Office of the General Counsel (BP-11) within 30 calendar days of the date the Regional Director signed the response. An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. 28 C.F.R. § 542.10-542.15; Gibbs v. Bureau of Prison Office, FCI, 986 F.Supp. 941, 943 (D.Md. 1997).

The District Court found that at least two of the documents provided by Plaintiff included allegations of retaliation and, therefore, determined that a question of fact existed as to whether Plaintiff raised his retaliation claim through proper administrative remedy proceedings. In its renewed motion, Defendants provided additional documents that establish that Plaintiff has not exhausted his administrative remedies with regards to his retaliation claim. Attached to Defendants' renewed motions are copies of Plaintiff's Requests for Administrative Remedy sent to the individual institution, the Regional Office, and the Central Office.[15] Nowhere in the Request for Administrative Remedy sent to the FCI-Gilmer and to the Mid-Atlantic Regional Office does Plaintiff mention a retaliation claim. In fact, not until the second Request for Administrative Remedy sent to the Central Office does Plaintiff mention retaliation: "Lastly,

---

[15] Dkt. No. 62-2, P. 2; Dkt. No. 62-3.

they all acquiesced in retaliation by placing or allowing my placement in the SHU for corresponding with Dr. Watkins."[16] Plaintiff submitted no additional evidence that would allow a reasonable jury to return a verdict in his favor, thus producing an issue for trial. Therefore, because Plaintiff failed to exhaust all his administrative remedies before filing his complaint, the retaliation allegation must be dismissed in accordance with the PLRA.

  B. **First Amendment Claim**

Plaintiff's complaint alleges that staff members violated his First Amendment rights by interfering with his correspondence with Dr. Watkins. The District Court disagreed with and rejected the Undersigned's recommendation to dismiss the claim finding that viewing the facts in the light most favorable to Plaintiff, a genuine issue of material fact existed regarding what regulation or prohibition, if any, Defendants imposed on Dr. Watkins regarding her correspondence with Plaintiff. In their renewed motion, Defendants argue that Plaintiff's allegations are speculative and conclusory and are insufficient to defeat the motion for summary judgment. Specifically, Defendants argue that Plaintiff is unable to provide any evidence to contradict the affidavits provided by Defendants from Joyce Francis, Valerie Rappold, and Karen Lambright all stating they had no correspondence with Dr. Watkins. Additionally, Defendants argue that Dr. Mace Leibson did not prevent Plaintiff from corresponding with Dr. Watkins but only requested that Dr. Watkins send her letters through the medical department for security and medical reasons. Defendants argue that these restrictions were in compliance with BOP regulations. Finally, Defendants argue that the letter in which Dr. Mace Leibson indicates Dr. Watkins should not communicate with Dr. Watkins was actually in response to Dr.

---

[16] Dkt. No. 62-5, P. 2.

Watkins's inquiry to Dr. Mace Leibson after Plaintiff filed the complaint with the West Virginia Board of Medicine against Dr. Watkins.

"'[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.'" Fugate v. Estep, 2010 WL 582381 *5 (D.Colo. 2010) (quoting Pell v. Procunier, 417 U.S. 817, 822 (1974)). "Prisoners' First Amendment rights 'may be curtailed whenever the institution's officials in the exercise of their informed discretion, reasonably conclude that such [rights] . . . possess the likelihood of disruption to prison order or stability, or otherwise interfere with the legitimate penological objections of the prison environment.'" Id. (citing Jones v. N.C. Prisoners' Labor Union, Inc., 433 U.S. 119, 132 (1977)). "[T]he maintenance of institutional security [is a] legitimate penological objective[] identified by the Supreme Court. Id. (citing O'Lone v. Estate of Shabazz, 482 U.S. 342, 348-49 (1987)). The right to correspond by mail is protected by the First Amendment; however, prisoners have only a "limited liberty interest in their mail under the First and Fourteenth Amendments." Franklin v. Beth, 2008 WL 4131629 * 5 (E.D.Wis. 2008); see also Sweet v. South Carolina Dept. of Corrections, 529 F.2d 854 (4th Cir. 1975). While prison inmates should be allowed reasonable and proper correspondence with members of immediate family and, at times, with others, correspondence "is subject to censorship to be certain of its reasonableness and propriety. . . . Control of the mail to and from inmates is an essential adjunct of prison administration and the maintenance of order within the prison." McCloskey v. State of Md., 337 F.2d 72, 74 (4th Cir. 1964); see also Green v. Werholtz, 2009 WL 1116316 *3 (D.Kan. 2009) (stating "Prison officials must be given considerate deference in the regulation of incoming mail, and the monitoring of inmate

10

correspondence is justified if the questioned practice is 'reasonably related to legitimate penological interests.'" (quoting Turner v. Safley, 482 U.S. 78, 89 (1986))). To state a First Amendment claim based on interference with the mail, the prisoner must "show that the interference either did not further one or more substantial government interests such as security, order and rehabilitation, or that the interference was greater than necessary to the protection of that interest." Ford v. Phillips, 2007 WL 946703 * 14 (S.D.N.Y. 2007).

Here, Plaintiff has not met his burden. Defendants offered affidavits from former Warden Francis, former Associate Warden Rappold, and former Health Services Administrator Lambright all of which state that they did not direct Dr. Watkins to stop corresponding with Plaintiff, direct Plaintiff to stop corresponding with Dr. Watkins, or require Dr. Watkins to return any letters sent to her by Plaintiff.[17] In fact, individual defendants Francis and Rappold deny making any contact with Dr. Watkins. Further, Defendants produced an affidavit from defendant Mace Leibson which stated that she "clearly recall[ed] telling Dr. Watkins to send any letters she wrote to [Plaintiff] through the Health Services Department first, and then the letters would be given to him."[18] She also states that she "may have used the term 'inappropriate,' but solely in the context of discussing unmonitored letters that could be a security concern if they discussed appointment days or if Health Services was not informed about Dr. Watkins' suggested treatment."[19] Plaintiff offered no evidence to contradict these affidavits.

Furthermore, assuming *arguendo* that Defendants interfered with Plaintiff's mail

---

[17] Dkt. Nos. 62-9, 62-10, and 62-11.

[18] Dkt. No. 62-12, P. 1.

[19] Dkt. No. 62-12.

correspondence, the Defendants were entitled to do so provided the interference furthered a substantial government interest. Here, Defendants assert they were justified to direct correspondence from Dr. Watkins to come through the prison medical department for both security and medical reasons. Prison officials do not inform inmates when they will be removed from the institution for scheduled medical appointments because of security risks involved, including the risk of escape. Plaintiff was classified as a high security inmate while he was incarcerated at FCI-Gilmer based on his history of escape and violence.[20] Because of his history, Defendants were, therefore, justified in monitoring Plaintiff's mail, especially his correspondence with medical doctors working outside FCI-Gilmer. Clearly, in light of the security concerns, which are identified as a legitimate penological interest by the Supreme Court, the actions taken by Defendants were rationally related to the objective of controlling the prison environment. Accordingly, summary judgment must be granted.

### C. Fifth Amendment Procedural Due Process Claim

Plaintiff's complaint alleges that Defendants violated his procedural due process rights by not providing him with a hearing before he was prohibited from communicating with Dr. Watkins. Defendants contend this claim is without merit for two reasons. First, Defendants contend that Dr. Mace Leibson never prohibited Plaintiff from communicating with Dr. Watkins but only asked Dr. Watkins to send her correspondence to Plaintiff through the medical department so it could be examined for security purposes and so the medical department could be kept informed of Dr. Watkins's medical recommendations. This, Defendants argue, is consistent with BOP Program Statement 5265.11 allowing staff to open, inspect, and read

---

[20] Dkt. No. 33-2.

12

incoming mail to inmates to maintain security and monitor problems. Second, in a response to an apparent rejected correspondence argument raised by Plaintiff, Defendants contend that BOP officials never rejected any correspondence from Dr. Watkins to Plaintiff and that, relying again on Program Statement 5265.11, the BOP's authority to reject mail does not require a due process hearing before it is invoked.

The Due Process Clause of the Fifth Amendment provides that no person shall "be deprived of life, liberty, or property, without due process of law." Due Process rights can be violated in two different ways. There is both a substantive and procedural component to due process. U.S. v. Salerno, 481 U.S. 739, 746 (1987). "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." Mathews v. Eldridge, 424 U.S. 319, 322 (1976). If a person is deprived of some liberty or property interest through governmental action, the person is entitled to a hearing. A complete trial is not required but only those procedural protections as demanded by the particular situation. Id. at 334.

Here, Plaintiff claims, relying on 28 C.F.R. § 540.13, Defendants violated his rights to procedural Due Process by failing to provide a hearing before he was prohibited from communicating with Dr. Watkins. Section 540.13 requires that the prison warden notify an inmate of the rejection of any letter addressed to that inmate and notify the inmate of the right to appeal the rejection. However, as Defendants contend, they did not violate § 540.13 for two reasons. First, as established by the affidavits of former Warden Francis, former Associate Warden Rappold, and former Health Services Administrator Lambright, Defendants did not prohibit Plaintiff from corresponding with Dr. Watkins or vice versa. Defendant Mace Leibson

13

merely asked Dr. Watkins to send her letters to Plaintiff through the prison medical center for security purposes. This behavior is permitted, in fact mandated, under the Regulations. 28 C.F.R. § 540.14(a) (stating that "[i]nstitution staff shall open and inspect all incoming general correspondence. Incoming general correspondence may be read as frequently as deemed necessary to maintain security or monitor a particular problem confronting an inmate). Second, § 540.13 does not provide for a hearing but provides for an appeal after a rejection. Therefore, Plaintiff has no right to a hearing under § 540.13 before letters are rejected by prison officials.

Plaintiff next contends, relying on 28 C.F.R. § 540.15, that before placing him on restricted general correspondence where there is no incident report, the Defendants were required to notify him about the restriction and give him an opportunity to respond. Wardens are permitted to place an inmate on restricted general correspondence based on security risks. 28 C.F.R. § 540.15(a)(3). Before placing an inmate on restricted general correspondence when there is no incident report, the warden shall advise the inmate of the reasons the inmate is placed on restricted general correspondence, give the inmate an opportunity to respond, and notify the inmate of the decision and advise the inmate of the right to appeal. 28 C.F.R. § 540.15(c)(2).

Here, there is no indication that Defendants placed Plaintiff on restricted general correspondence. Defendants did not prohibit Plaintiff from writing to Dr. Watkins. Nor did Defendants prohibit Dr. Watkins from corresponding with Plaintiff. Rather, Defendants asked that Dr. Watkins send her letters to Plaintiff through the prison medical center so it could be screened for security and medical purposes. Again, this behavior is specifically permitted under the Regulations. 28 C.F.R. § 540.14(a).

Because Plaintiff failed to submit any evidence to create a genuine issue of fact, summary

judgment must be awarded to Defendants.

   D. **<u>Supervisor Liability</u>**

In the original complaint, Plaintiff named as individual defendants, former Warden Joyce Francis, former Associate Warden Valerie Rappold, and former Health Services Administrator Karen Lambright. Defendants argue in their renewed motion that these individual defendants must be dismissed from the action because neither Defendant Francis nor Defendant Rappold ever spoke or communicated with Dr. Watkins and Defendant Lambright cannot recall speaking with Dr. Watkins but is certain she never told Dr. Watkins that communicating with Plaintiff was inappropriate or instructed Dr. Watkins to return any letters from Plaintiff. Further, Defendants argue that Plaintiff has failed to produce any evidence to contradict the statements of Defendants Francis, Rappold, and Lambright. Accordingly, Defendants argue, absent vicarious liability, the individual defendants can only be liable for their own conduct, of which none was unlawful.

"The decisions of this Court have firmly established the principle that supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates. Liability in this context is not premised on *respondeat superior*, but on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." <u>Slakan v. Porter</u>, 737 F.2d 368, 372 (4th Cir. 1984). "The plaintiff, of course, assumes a heavy burden of proof in supervisory liability cases. He not only must demonstrate that the prisoners face a pervasive and unreasonable risk of harm from some specified source, but he must show that the supervisor's corrective inaction amounts to deliberate indifference or 'tacit authorization of the offensive [practices].'" <u>Id</u>. at 373.

The Fourth Circuit has laid out the requirements that are necessary in order for one to establish supervisory liability. In order to establish supervisory liability under a civil rights statute, (1) supervisor must have actual or constructive knowledge that his subordinate was engaged in conduct that posed pervasive and unreasonable risk of constitutional injury, (2) supervisor's response to that knowledge was so inadequate as to show deliberate indifference or tacit authorization of alleged offensive practices, and (3) affirmative casual link existed between supervisor's inaction and particular constitutional injury suffered. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994).

In its initial Order declining to adopt the Undersigned's Report and Recommendation, the District Court granted Plaintiff's request for additional time to conduct discovery to determine the extent of the involvement of the individual defendants. To date, Plaintiff has filed no response to the Defendants' renewed motion to dismiss. Thus, Plaintiff has provided no additional evidence to suggest that the individual defendants knew or should have known about a constitutional violation, the individual defendants failed to adequately respond to the unconstitutional practice, and a link exists between the individual defendants' actions with any alleged constitutional violation. Defendants, on the other hand, submitted affidavits from Joyce Francis,[21] Valerie Rappold,[22] and Karen Lambright[23] all of which denied any constitutional injury to Plaintiff.

Plaintiff has failed to produce any evidence to the contrary. Accordingly, Plaintiff cannot

---

[21] Dkt. No. 62-9.

[22] Dkt. No. 62-10.

[23] Dkt. No. 62-11.

carry his heavy burden to establish supervisory liability and the individual defendants are entitled to summary judgment.

### E. Qualified Immunity

Defendants argue that they are entitled to qualified immunity from Plaintiff's claim. Specifically, Defendants argue that Plaintiff failed to establish a constitutional violation, and because no constitutional violation occurred, there can be no clearly established right implicated. Accordingly, Defendants argue that they are entitled to qualified immunity.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 129 S.Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity is not a defense but shields government officials from suit. Id. When resolving a government official's qualified immunity claim, the court must examine two factors: (1) whether the facts alleged by the plaintiff make out a violation of a constitutional right and (2) whether the right "was 'clearly established' at the time of the defendant's alleged misconduct." Id. at 815-16. The Supreme Court first set forth these two factors in a two-part sequential test in Saucier v. Katz, 533 U.S. 194 (2001). However, courts are now free to "exercise their sound discretion in deciding which of the two prongs . . . should be addressed first in light of the circumstances in the particular case at hand." Id. at 818.

Plaintiff asserts in his original complaint that Defendants violated his First Amendment rights by interfering with his right to communicate with Dr. Watkins. However, as Defendants argue and the Undersigned has found, Defendants did not deprive Plaintiff of any constitutional

17

right. Their conduct, directing Dr. Watkins to send her letters addressed to Plaintiff through the prison medical center for security reasons, was specifically permitted by 28 C.F.R. § 540.14(a). See also, White v. U.S., 2008 WL 1927222 *2 (N.D.W.Va. 2008) (recognizing Federal Regulations allow incoming mail to be opened, inspected, and read as frequently as necessary to maintain security). Furthermore, assuming *arguendo* that Defendants restrained Plaintiff's ability to communicate with Dr. Watkins, this right was not "clearly established" as required to defeat a claim for qualified immunity. Federal Regulations and numerous courts, including the Supreme Court, have recognized the need for prison inmates' rights to be curtailed when they are inconsistent with legitimate penological objectives of the corrections system. The Supreme Court has recognized maintaining facility security as an appropriate penological objective which may curtail such rights.

Accordingly, Plaintiff has not alleged sufficient facts to maintain a constitutional violation, and the claim must be dismissed based on qualified immunity.

## V. Motion for Court Order Requiring Parties to Contact Counsel for a Non-Party

On March 24, 2010, Dan Taylor filed a Notice of Appearance and Motion[24] on behalf of Colleen Watkins, M.D., a non-party but material witness in the case, requesting that any/all further contact with Dr. Watkins be made solely through him and moving the Court for an Order requiring the parties to contact him regarding matters involving Dr. Watkins.

Counsel for non-party, Colleen Watkins, M.D., provided no authority to support his motion. The Court knows of no authority to support his motion. Therefore, the Motion is **DENIED**.

---

[24] Dkt. No. 58.

## VI. Recommendation

In consideration of the foregoing, it is the Undersigned's recommendation that the Defendants' Renewed Motion to Dismiss or, in the alternative, for Summary Judgment (Dkt. No. 61) be **GRANTED**, and the Plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITH PREJUDICE**.

Any party may file within fourteen (14) days after being served with a copy of this Recommendation with the Clerk of Court written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Court. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket sheet. The Clerk of the Court is further directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

DATED: July 1, 2010

/s/ *James E. Seibert*

JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE